UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MAX RYOTA MOROHASHI,

                    Plaintiff,

        -against-

THE CITY OF NEW YORK, OFFICER OSCAR
MOSQUERA, FNU OFFICER GUERRERO,
FNU SGT LEE, AND OTHER AS-YET-
UNKNOWN POLICE OFFICERS &
SUPERVISORS JOHN AND JANE DOES # 1–10

                    Defendants.

**21-cv-7011**

**COMPLAINT AND
JURY DEMAND**

Plaintiff MAX RYOTA MOROHASHI, by his attorneys, ZMO Law PLLC, complaining of the Defendants, respectfully alleges as follows based on information and belief:

## PRELIMINARY STATEMENT

1.    Plaintiff Max Morohashi seeks compensation for the unlawful conduct of New York City Police Department ("NYPD") officers who shackled and handcuffed him to a hospital bed for more than five days without conducting an arraignment. Mr. Morohashi posed no threat and had been arrested for a misdemeanor that qualified him for automatic non-cash bail. The

officers were acting pursuant to the NYPD's inhumane policy of shackling all hospitalized arrestees, even when there is no safety reason for doing so.

2.      On September 26, 2020, police responded to Mr. Morohashi's apartment in Long Island City in connection with a family dispute between him and his uncle. Officers arrested Mr. Morohashi and, observing that he posed no threat and was distressed and sweating profusely, transported him to Weill Cornell Presbyterian Hospital in Manhattan. At the hospital, officers shackled Mr. Morohashi's feet together and cuffed his left hand to a hospital bed; he remained cuffed and shackled for roughly 126 hours while being treated for rhabdomyolysis, a breakdown of muscle tissue. Officers guarded Mr. Morohashi around the clock. He remained shackled when using the restroom, which he was forced to do in the presence of officers. Terrified and alone, Mr. Morohashi was repeatedly prevented from speaking with his family and his attorney.

3.      At any time during Mr. Morohashi's hospitalization, the officers could have ended the torment by conducting a bedside arraignment *or* issuing a Desk Appearance Ticket. Had he been timely arraigned, as the United States and New York State Constitution require, Mr. Morohashi would have been unshackled and released on his own recognizance.

2

4.    The unreasonable delay in providing an arraignment violated Mr. Morohashi's Fourth Amendment right to a prompt determination of probable cause. By cuffing and shackling Mr. Morohashi for more than five days, the officers used excessive force against Mr. Morohashi in violation of the Fourth Amendment and subjected him to unconstitutional conditions of confinement in violation of the Due Process Clause of the Fourteenth Amendment. Defendants also violated the Americans with Disabilities Act by refusing to arraign Mr. Morohashi on account of his actual or perceived disability. Mr. Morohashi sustained serious physical and psychological harm and incurred significant legal expenses.

5.    This is an action for compensatory damages, punitive damages and attorney fees pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of Plaintiff's civil rights, and pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12132, as secured by said statutes, the common law, and the Constitutions of the State of New York and the United States.

## JURISDICTION

6.    Plaintiff brings this action for compensatory and punitive damages, affirmative and equitable relief, an award of costs and attorney fees, and such other and further relief as this Court deems equitable and just.

3

7.     This action is brought pursuant to 42 U.S.C. § 1983 *et seq.* to redress the deprivation under the color of law of Plaintiff's rights as secured by the United States Constitution, as well as under 42 U.S.C. § 12132, to redress the deprivation of rights secured by the Americans with Disabilities Act.

8.     The Court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

9.     The Court has diversity jurisdiction over Mr. Morohashi's claims brought under the laws of the State of New York pursuant to 28 U.S.C. § 1332.

10.     The Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over Mr. Morohashi's claims brought under the laws of the State of New York.

11.     Mr. Morohashi has complied with the requirements of New York General Municipal Law Section 50-I by making and serving a notice of claim on the Comptroller of the City of New York on December 9, 2020.

12.     Said notice was served within the time required by New York General Municipal Law Section 50-e.

13.     More than thirty days have elapsed since the service of that notice and no offer of settlement has been made.

14.     At the request of the City of New York, Mr. Morohashi submitted to a hearing pursuant to New York Municipal Law Section 50-h on May 4, 2021.

## VENUE

15.     Venue is properly laid in the Eastern District of New York under 28 U.S.C. § 1391(b) because this is the District in which the claim arose.

## JURY DEMAND

16.     Plaintiff respectfully demands a trial by jury on all issues and claims set forth in this Complaint pursuant to the Seventh Amendment of the United States Constitution and Fed. R. Civ. P. 38(b).

## PARTIES

17.     Plaintiff MAX RYOTA MOROHASHI, a 27-year-old male, is a citizen of the United States and a resident of California.

18.     Defendant CITY OF NEW YORK was and is a municipal corporation that is a political subdivision of the State of New York, was the employer of the Defendant Officers and was at all times relevant to this Complaint responsible for the administrative and managerial policies, practices and customs of the New York City Police Department ("NYPD").

19.    Officer Oscar Mosquera was at all times relevant to this Complaint a duly appointed and acting officer of the NYPD, acting under color of law and within the scope of his employment in carrying out law enforcement functions. He is sued in his individual and official capacities.

20.    Defendant FNU Officer Guerrero was at all times relevant to this Complaint a duly appointed and acting officer of the NYPD, acting under color of law and within the scope of her employment in carrying out law enforcement functions. She is sued in her individual and official capacities.

21.    Defendant FNU Sergeant Lee was at all times relevant to this Complaint a duly appointed and acting officer of the NYPD, acting under color of law and within the scope of her employment in carrying out law enforcement functions. She is sued in her individual and official capacities.

22.    Defendants Does #1 through 10, whose actual names Plaintiff has been unable to ascertain notwithstanding reasonable efforts to do so, but who are sued herein by the fictitious designations "John Doe" and "Jane Doe," represent those officers, supervisors, and/or other agents and employees of the City of New York, acting under color of law and within the scope of their employment in carrying out law enforcement functions, who participated in the misconduct described herein. They are sued in their individual and official capacities.

## **FACTS**

23.     Plaintiff Max Ryota Morohashi ("Plaintiff") has never been convicted of a crime.

24.     On September 26, 2020, Plaintiff lived at 38-57 10th Street in Long Island City in Queens County, New York.

25.     The building was owned by Plaintiff's uncle, Iwao Morohashi.

26.     At around 12:00 pm on September 26, 2020, Plaintiff and Iwao began arguing.

27.     Officers of the New York City Police Department arrived at 38-57 10th Street at approximately 1:00 pm.

28.     Plaintiff was in his bedroom on the third floor when the officers arrived.

29.     The officers entered the building and walked up to the second floor.

30.     The officers yelled at Plaintiff to leave his bedroom and come downstairs.

31.     Plaintiff complied with the officers' commands and stepped outside of his bedroom.

32.     Looking down the stairs, he saw several officers pointing firearms at him.

33.     Believing he would be fired upon, Plaintiff stepped back into his bedroom.

34.     The officers continued to direct Plaintiff to leave his bedroom and come downstairs.

35.     Each time Plaintiff stepped out of his bedroom, he saw that officers still had guns pointed at him, so he retreated inside.

36.     Officers eventually used force to enter Plaintiff's apartment by knocking down part of his bedroom wall.

37.     The officers picked up Plaintiff by his hands and feet, handcuffed him, and placed him under arrest.

38.     Plaintiff was in shock and sweating profusely.

39.     At no time did Plaintiff threaten the officers.

40.     Police officer Oscar Mosquera of NYPD's 114th Precinct later filed a criminal complaint against Plaintiff for misdemeanor assault in the third degree, New York Penal Law § 120.00-1.

41.     The criminal complaint against Plaintiff was later dismissed.

42.     Upon arresting Plaintiff, officers put him in an ambulance and directed the medical workers to drive him to a local hospital.

43.     Plaintiff was driven to Weill Cornell Medical Center ("Weill Cornell") at New York-Presbyterian Hospital in Manhattan.

44.     Plaintiff was admitted to Weill Cornell at approximately 2:00 p.m. on September 26, 2020.

45.     Officers shackled Plaintiff's feet and cuffed his left hand to a hospital bed.

46.     Plaintiff remained cuffed to the bed and shackled for the duration of his stay at Weill Cornell, which lasted approximately 126 hours.

47.     Plaintiff was scared and anxious when admitted to the hospital, but calmed down after several minutes.

48.     Plaintiff remained calm and cooperative throughout the entirety of his hospital stay.

49.     For example, on September 27, 2020, Dr. Pandya Nekee documented that Plaintiff "has a pleasant affect," was "fully conversant," and was "found to appear calm."

50.     Doctors treated Plaintiff for a physical condition called rhabdomyolysis, a breakdown of muscle fibers.

51.     Rhabdomyolysis did not impact Plaintiff's cognition or otherwise affect Plaintiff's capacity to participate in an arraignment.

52.     Plaintiff was guarded at all times by a rotation of NYPD officers while he was shackled and handcuffed to a hospital bed for over five days at Weill Cornell.

53.     When Plaintiff had to use the bathroom, he was forced to do so in the presence of the officers.

54.     On at least one occasion, an officer refused to uncuff Plaintiff so that he could urinate.

55.     Humiliated, Plaintiff returned to his bed without using the bathroom.

56.     On at least one occasion, officers prevented Plaintiff from receiving a call from his lawyer.

57.     Officers prevented Plaintiff from calling his mother or his lawyer.

58.     Plaintiff's wrist and ankles grew increasingly sore as the hours and days passed.

59.     Plaintiff asked officers to uncuff him, but the officers refused.

60.     Plaintiff requested a bedside arraignment but was refused.

61.     The City has the capacity to conduct beside arraignments, including for individuals held in custody at Weill Cornell.

62.     Under New York law, courts are not permitted to set cash bail for misdemeanor assault in the third degree, the crime alleged against Plaintiff. Once a defendant has been arraigned on that charge, he or she is automatically released pending trial.

63.     Officers had the ability to issue a Desk Appearance Ticket ("DAT") in response to the arrest. A DAT would have allowed the officers to release Plaintiff from custody and required him to return to court for arraignment.

64.     Officers refused to issue Plaintiff a DAT so that Plaintiff could be uncuffed and unshackled.

65.     The officers did not explain to Plaintiff why he was being cuffed and shackled and guarded by armed police officers.

66.     By the afternoon of October 1, 2020, Plaintiff had been shackled and handcuffed to a bed for approximately five days.

67.     Plaintiff was in police custody during his entire hospital stay.

68.     Plaintiff's attorney filed a petition for a writ of *habeas corpus* in the Supreme Court for the State of New York, County of Queens.

69.     The petition stated that Plaintiff was being held in custody at Weill Cornell without an arraignment in violation of the New York and United States Constitutions.

70.     Plaintiff was then discharged from the hospital at approximately 6:30 p.m. on October 1, 2020.

71.     The medical staff at Weill Cornell provided officers with discharge papers summarizing Plaintiff's medical treatment and setting forth a recommended course of treatment.

72.     The officers failed to provide the discharge papers to Plaintiff, his family, or his lawyer.

73.     Police transported Plaintiff in custody to the Queens County Central Booking Unit at Kew Gardens.

74.     Plaintiff was arraigned remotely at approximately 8:30 p.m. on October 1, 2020, using the Skype for Business application.

75.     The same or similar technology could have been used to arraign Plaintiff at any time during his 126 hours in police custody at Weill Cornell.

## DAMAGES

76.     Plaintiff suffered physical, psychological, economic, and emotional injuries as a result of having guns pointed at him in his own home, having the wall of his apartment destroyed and being handcuffed and shackled to a bed for more than five days while in custody of the NYPD at Weill Cornell Medical Center.

77.     Plaintiff incurred substantial legal expenses as a result of the Defendants' conduct.

78.     Plaintiff's physical injuries include, but are not limited to, rhabdomyolysis, which was caused by the Defendant Officers' unreasonable use of force and Plaintiff's prolonged detention.

79.     Plaintiff suffered the loss of his freedom for approximately 126 hours, personal injuries, pain and suffering, severe mental anguish, emotional distress, humiliation, indignities and embarrassment, degradation, damage to reputation, and loss of natural psychological development, all of which continue to date and are likely to continue into the future.

## COUNT I

### 42 U.S.C. § 1983 False arrest under Fourth and Fourteenth Amendments — Defendant Police Officers

80.     Plaintiff hereby incorporates by reference all the foregoing paragraphs and further alleges as follows:

81.     Defendants intentionally subjected Plaintiff to illegal, improper false arrest, taking him into custody, and causing him to be falsely imprisoned, detained, and confined, without probable cause, privilege or consent.

82.     At all times relevant herein, Plaintiff was conscious of said confinement and did not consent to same.

83.     At all times relevant herein, the said confinement of Plaintiff was without probable cause and was not otherwise privileged.

84.     At all times relevant herein, the aforesaid actions by defendants constituted a deprivation of Plaintiff's rights.

85.     Any joint and several liability of the defendants is not limited by CPLR 1601, by reason of the exceptions set forth in Article 16 of the CPLR.

86.     Plaintiff is entitled to punitive damages against the individual defendants.

## COUNT II

**42 U.S.C. § 1983 Excessive Delay in Arraignment in violation of the Fourth and Fourteenth Amendments — Defendant Officers**

87.     Plaintiff hereby incorporates by reference all the foregoing paragraphs and further alleges as follows:

88.     The Defendant Officers, individually and in concert, knowingly, willfully, intentionally, and motivated by ill will, deprived Plaintiff of an arraignment for approximately 126 hours following his arrest at or around 2:00 p.m. on September 26, 2020.

89.     No *bona fide* emergency or other extraordinary circumstance justified the delay in Plaintiff's arraignment.

90.     The delay was motivated by ill will against Plaintiff.

91.     Plaintiff was not arrested pursuant to a warrant.

92.     The Defendant Officers thereby violated or caused the violation of Plaintiff's clearly established right not to be deprived of liberty without a prompt determination of probable cause by a neutral magistrate, in violation of the Fourth and Fourteenth Amendments to the United States Constitution, and caused all of his injuries and damages.

93.     Defendants are liable to Plaintiff pursuant to 42 U.S.C. § 1983.

94.     Each Defendant named in this Count is also liable for unreasonably failing to intervene to prevent such infringement of Plaintiff's constitutional rights.

95.     The actions of the Defendant Officers were motivated by evil intent and/or were done in reckless or callous indifference to Plaintiff's constitutional rights. Accordingly, punitive damages should be imposed in an amount commensurate with the wrongful acts alleged herein.

96.     Any joint and several liability of the defendants is not limited by CPLR 1601, by reason of the exceptions set forth in Article 16 of the CPLR.

## COUNT III

**42 U.S.C. § 1983 Unconstitutional Conditions of Confinement in violation of the Fifth and Fourteenth Amendments — Defendant Officers**

97.     Plaintiff hereby incorporates by reference all the foregoing paragraphs and further alleges as follows:

98.     The Defendant Officers, individually and in concert, knowingly, willfully, intentionally, and with deliberate indifference, subjected Plaintiff to pretrial conditions of confinement that, either alone or in combination, posed an unreasonable risk of serious damage to Plaintiff's health, including Plaintiff's physical and mental soundness.

99.     The aforementioned conditions include, but are not limited to, shackling Plaintiff's feet and cuffing his hand to hospital bed for approximately 126 hours; forcing Plaintiff to urinate while shackled and in the presence of officers; and prohibiting Plaintiff from contacting his family, friends or attorney.

100.    The aforementioned conditions deprived Plaintiff of basic human needs and amounted to punishment without due process of law.

101.    The Defendant Officers thereby violated or caused the violation of Plaintiff's clearly established right not to be punished without due process of law, in violation of the Fifth and Fourteenth Amendments to the United States Constitution, and caused all of his injuries and damages.

102.    Defendants are liable to Plaintiff pursuant to 42 U.S.C. § 1983.

103.    Each of the Defendant Officers is also liable for unreasonably failing to intervene to prevent such infringement of Plaintiff's constitutional rights.

104.    The actions of the Defendant Officers were motivated by evil intent and/or were done in reckless or callous indifference to Plaintiff's constitutional rights. Accordingly, punitive damages should be imposed in an amount commensurate with the wrongful acts alleged herein.

105.    Any joint and several liability of the defendants is not limited by CPLR 1601, by reason of the exceptions set forth in Article 16 of the CPLR.

## COUNT IV:

### 42 U.S.C. § 1983: Excessive Force in Violation of the Fourth and Fourteenth Amendments – Defendant Officers

106.    Plaintiff hereby incorporates by reference all the foregoing paragraphs and further alleges as follows:

107.    The Defendant Officers, acting individually and in concert, deliberately and intentionally pointed firearms at Plaintiff and forcefully removed him from his apartment by picking him up from his hands and feet.

108.    The Defendant Officers, acting individually and in concert, deliberately and intentionally broke an interior door within Plaintiff's dwelling, causing economic damages and emotional distress to Plaintiff in violation, *inter alia*, of the Fourth Amendment under *Payton v. New York*, 445 U.S. 573 (1980).

109.    The Defendant Officers, acting individually and in concert, deliberately and intentionally handcuffed Plaintiff to a hospital bed and

17

shackled his feet for more than five days, knowing that no use of force was necessary under the circumstances.

110.    The Defendant Officers' use of force was excessive and unreasonable under the circumstances.

111.    By their actions, the Defendant Officers violated Plaintiff's clearly established right to be free from excessive and unreasonable use of force, to not be deprived of liberty without due process of law, and to be free from summary punishment.

112.    Each of the Defendants named in this Count also is liable for unreasonably failing to intervene to prevent such infringement of Plaintiff's constitutional rights.

113.    The actions of the Defendant Officers were motivated by evil intent and/or were done in reckless or callous indifference to Plaintiff's constitutional rights. Accordingly, punitive damages should be imposed in an amount commensurate with the wrongful acts alleged herein.

114.    Any joint and several liability of the defendants is not limited by CPLR 1601, by reason of the exceptions set forth in Article 16 of the CPLR.


**COUNT V**

**42 U.S.C. § 1983, Municipal liability – Defendant City of New York**

115.    Plaintiff hereby incorporates by reference paragraphs 1 through 79 and further alleges as follows:

116.    The Police Commissioner and police officers employed by the NYPD are agents and employees of Defendant City of New York.

117.    At all times relevant to this Complaint, defendants, collectively and individually, while acting under color of state law, engaged in conduct which constitutes a custom, policy, practice, procedure or rule of the City of New York, which is forbidden by the Constitution of the United States.

118.    At all times material to this Complaint, the aforementioned policy of the City of New York and the New York City Police Department was to handcuff and shackle all hospitalized arrestees, including individuals, like Plaintiff, who are arrested for non-felony offenses, qualify for non-cash bail, have no criminal history, pose no threat to anyone, and are not attempting to escape.

119.    Defendant City, through its policymakers within the NYPD, explicitly or tacitly approved the unconstitutional practice described above. In maintaining its policy, practice, procedure or rule regarding the indefinite physical restraint of hospitalized detainees, the city was deliberately indifferent to the constitutional rights of the public generally, and Plaintiff specifically.

120.    The Defendant Officers acted consistently with and pursuant to the aforementioned policy when they engaged in the conduct set forth above.

121.    At all relevant times, Defendant City was aware of and deliberately indifferent to the fact that its policy would result in the deprivation of Plaintiff's and others' constitutional rights.

122.    The aforementioned policy is in part set forth in NYPD Patrol Guide, Section 210-02, which states that "The Department's policy is to handcuff all hospitalized prisoners to ensure the safety of persons present and prevent escape." P.G. 210-02 (emphasis in original).

123.    In addition, Defendant City failed to adequately train the Defendant Officers not to restrain hospitalized pretrial detainees for unreasonable periods of time and when no restraints are necessary.

124.    Defendant City's failure to train Defendant Officers directly caused Defendant Officers to cuff and shackle Plaintiff and their belief that the NYPD Patrol Guide supersedes law.

125.    Defendant City was deliberately indifferent to the need for such training, as evidenced in part by at least one prior judgment against the City for the same policy, *see Brim v. City of New York, et al.*, 13-cv-1082 (SJ) (judgment entered Aug. 3, 2017), and because of the inherent obviousness of the need to train officers in this area.

126.    The aforementioned policies exposed Plaintiff to a substantial risk of serious harm.

127.    The aforementioned policies were the direct and proximate cause of the constitutional violations suffered by Plaintiff as alleged herein.

128.    The aforementioned policies played a part in the Defendant Officers' decision to keep Plaintiff handcuffed and shackled to a hospital bed for more than five days.

129.    The aforementioned policies were the moving force behind the constitutional violations suffered by Plaintiff as alleged herein.

## COUNT VI

### 42 U.S.C. § 12132 – Violation of the Americans with Disabilities Act – Defendant Officers

130.    Plaintiff hereby incorporates by reference paragraphs 1 through 79 and further alleges as follows:

131.    Between September 26, 2020, and October 1, 2020, Plaintiff suffered from a physical or mental impairment that substantially limited one or more major life activities, or was regarded by the Defendants as having such an impairment, and was therefore a qualified person with a disability within the meaning of the Americans with Disabilities Act. 42 U.S.C. § 12101(1).

132.    Specifically, Plaintiff suffered from rhabdomyolysis.

133.    Plaintiff was regarded by the Defendant Officers as suffering from rhabdomyolysis, psychosis and/or other mental illnesses.

134.    Solely by reason of his actual and/or perceived disabilities, Plaintiff was excluded from participation and denied the benefits of a timely arraignment.

135.    A timely arraignment is "a public program or activity" within the meaning of the Americans with Disabilities Act.

136.    Any joint and several liability of the defendants is not limited by CPLR 1601, by reason of the exceptions set forth in Article 16 of the CPLR.

## COUNT VII:

**False arrest under New York State Law – Defendant Officers**

137.    Plaintiff hereby incorporates by reference paragraphs 1 through 79 and further alleges as follows:

138.    At all times mentioned herein, defendant officers arrested Plaintiff in the absence of probable cause and without a warrant.

139.    As a result of the aforesaid conduct by the defendants, Plaintiff was subjected to illegal, improper and false arrest by the defendants, taken into custody, and caused to be falsely imprisoned, detained, and confined, without probable cause, privilege or consent.

140.    At all times relevant herein, Plaintiff was conscious of said confinement and did not consent to same.

141.    At all times relevant herein, the said confinement of Plaintiff was without probable cause and was not otherwise privileged.

142.    At all times relevant herein, the aforesaid actions by defendants constituted a deprivation of Plaintiff's rights.

143.    As a result of defendants' unlawful conduct, plaintiff has suffered physical pain and mental anguish, shock, fright, apprehension, embarrassment and humiliation and loss of freedom.

144.    Defendant City, as employer of the Defendant Officers, is responsible for the Defendant Officers' wrongdoing under the doctrine of *respondeat superior*.

145.    Any joint and several liability of the defendants is not limited by CPLR 1601, by reason of the exceptions set forth in Article 16 of the CPLR.

146.    By reason of the foregoing, Plaintiff is entitled to punitive damages against the individual defendants named herein.

## COUNT VIII:

**False imprisonment under New York State law – Defendant Officers**

147.    Plaintiff hereby incorporates by reference paragraphs 1 through 79 and further alleges as follows:

23

148.   As a result of the foregoing, Plaintiff was falsely imprisoned, his liberty was restricted for an extended period of time, he was put in fear for his safety, and humiliated and subjected to handcuffing and shackling and physical restraints.

149.   At all times relevant herein, Plaintiff was conscious of said confinement and did not consent to same.

150.   At all times relevant herein, said confinement of Plaintiff was without probable cause and was not otherwise privileged.

151.   At all times relevant herein, the aforesaid actions by defendants constituted a deprivation of Plaintiff's rights.

152.   As a result of defendants' conduct, Plaintiff has suffered physical pain and mental anguish, shock, fright, apprehension, embarrassment and humiliation and loss of freedom.

153.   Defendant City, as employer of the Defendant Officers, is responsible for the Defendant Officers' wrongdoing under the doctrine of *respondeat superior*.

154.   Any joint and several liability is not limited by CPLR 1601, by reason of the exceptions set forth in Article 16 of the CPLR.

155.   Plaintiff is entitled to punitive damages against the individual defendants.

## COUNT IX

**Intentional Infliction of Emotional Distress – Defendant Officers**

156.     Plaintiff hereby incorporates by reference paragraphs 1 through 79 and further alleges as follows:

157.     The Defendant Officers engaged in extreme and outrageous conduct by pointing guns at Plaintiff in his home, physically removing him from his home, and applying restraints to Plaintiff's arms and legs for a period of approximately 126 hours.

158.     In shackling and cuffing Plaintiff, the Defendants ignored a clear risk of harm to Plaintiff.

159.     The Defendants intended to cause Plaintiff severe emotional distress or disregarded the substantial likelihood that their use of force would cause Plaintiff such distress.

160.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages herein alleged, including but not limited to severe emotional distress.

161.     Defendant City, as employer of the Defendant Officers, is responsible for the Defendant Officers' wrongdoing under the doctrine of *respondeat superior*.

162.    Any joint and several liability of the defendants is not limited by CPLR 1601, by reason of the exceptions set forth in Article 16 of the CPLR.

163.    Plaintiff is entitled to punitive damages against the individual defendants.

## COUNT X

### Assault under New York State law – Defendant Officers

164.    Plaintiff hereby incorporates by reference paragraphs 1 through 79 and further alleges as follows:

165.    At all relevant times, the Defendant Officers' actions placed Plaintiff in apprehension of imminent harmful and offensive bodily contact.

166.    As a result of Defendants' conduct, Plaintiff has suffered physical pain and mental anguish, shock, fright, apprehension, embarrassment and humiliation.

167.    By reason of the forgoing, Defendants aimed guns at Plaintiff and forcefully removed him from his apartment by picking him up by his hands and feet.

168.    By reason of the forgoing, Plaintiff was handcuffed and shackled to his hospital bed for more than five consecutive days without a judicial hearing, sustained physical injuries to his limbs, suffered shock to his nerves

and nervous system, and suffered and will continue to suffer great pain and anguish in body and mind.

169.    By reason of the forgoing, Plaintiff is entitled to punitive damages against the Defendant Officers named herein.

170.    Defendant City, as employer of the Defendant Officers, is responsible for the Defendant Officers' wrongdoing under the doctrine of *respondeat superior*.

171.    Any joint and several liability of the defendants is not limited by CPLR 1601, by reason of the exceptions set forth in Article 16 of the CPLR.

172.    Plaintiff is entitled to punitive damages against the individual defendants.

## COUNT XI

### Battery under New York State law – Defendant Officers

173.    Plaintiff hereby incorporates by reference paragraphs 1 through 79 and further alleges as follows:

174.    At all relevant times, the Defendant Officers touched Plaintiff in a harmful and offensive manner.

175.    At all relevant times, the Defendant Officers touched Plaintiff in such a manner without privilege or consent from Plaintiff.

176.    As a result of the aforementioned conduct, Plaintiff has suffered severe physical pain and mental anguish, shock, fright, apprehension, embarrassment and humiliation.

177.    By reason of the forgoing, Plaintiff was forcefully removed from his bedroom and handcuffed and shackled to a hospital bed for more than five consecutive days without a judicial hearing, sustained physical injuries to his limbs, suffered shock to his nerves and nervous system, and suffered and will continue to suffer great pain and anguish in body and mind.

178.    By reason of the forgoing, Plaintiff is entitled to punitive damages against the Defendant Officers named herein.

179.    Defendant City, as employer of the Defendant Officers, is responsible for the Defendant Officers' wrongdoing under the doctrine of *respondeat superior*.

180.    Any joint and several liability of the defendants is not limited by CPLR 1601, by reason of the exceptions set forth in Article 16 of the CPLR.

Dated:      New York, New York
              December 20, 2021.

ZMO LAW PLLC

BY:  s/ Zachary Margulis-Ohnuma
ZACHARY MARGULIS-OHNUMA
260 Madison Ave., 17th Floor
New York, NY 10016
(212) 685-0999

BY:  s/ Benjamin Notterman
BENJAMIN NOTTERMAN
260 Madison Ave., 17th Floor
New York, NY 10016
(212) 685-0999

*Attorneys for Plaintiff Max Ryota Morohashi*